HURLEY, Judge.
The defendant/appellant Bernard Butts was convicted of aiding and abetting in a securities fraud scheme. After a careful review of the record, we have determined that the evidence was insufficient to support this conclusion. Accordingly, we reverse.
Defendant Butts and four others were charged in an eighteen count information with violating various provisions of the Florida Securities Act, Section 517.011 et seq., Florida Statutes (1981). The trial court, after a hearing, dismissed counts one through seventeen; only count eighteen remained.
Count eighteen charged five defendants with violating Section 517.301(1), Florida Statutes (1981). This section prohibits fraud, deceit, and misstatements of fact or failure to state material facts, in the sale of securities. Specifically, Mr. Butts was charged with acting in concert and cooperation with the other defendants in selling promissory notes[1] secured by mortgages to certain individuals. The count alleged, broadly, that Mr. Butts and the other defendants engaged in a scheme or artifice, by misstating or failing to state material facts, which acted as a fraud on the purchasers of the promissory notes.[2]
The evidence at trial indicated that Mr. Butts had proposed and helped develop a plan in which SEI, Inc., a mortgage brokerage company, would sell promissory notes to investors. These notes were secured by mortgages on land in the proposed housing *470 development, Interlachen Village Estates (Interlachen). The idea was that the investors would purchase the promissory notes, backed by mortgages on the undeveloped land, from SEI. The capital generated from the sales of these promissory notes would be used to develop the property. As the developed properties were sold, the sale proceeds would be used to pay off the promissory notes and buy back the mortgages issued by SEI.
SEI successfully sold mortgages and promissory notes on all of the lots in Inter-lachen. However, difficulties developed and the land could not be registered with the state for sale to individual purchasers. Consequently, Interlachen had no income with which to buy back the promissory notes and mortgages.
At the conclusion of a non-jury trial, the trial court found that Mr. Butts was guilty as an aider and abettor. However, the trial court noted a conflict in the statutes of limitations governing prosecution of the action and, therefore, dismissed the case, finding that the statute had run. This court reversed, finding that a longer statutory period applied. State v. Butts, 388 So.2d 317 (Fla. 4th DCA 1980). Upon remand, the trial court adjudicated Mr. Butts guilty of aiding and abetting in the fraudulent securities transaction and sentenced him to two years imprisonment. Again, we are compelled to reverse.
We begin by noting that the state never demonstrated that the overall plan to develop and sell Interlachen Village Estates was fraudulent. On the contrary, the proof at trial seemed to indicate that although the project was grossly undercapitalized, nonetheless it was economically feasible. For example, testimony indicated that property could not be mortgaged for more than fifty per cent of its fair market value. Here each of the lots was mortgaged for $2,000. The state’s testimony, however, indicated that the proposed retail price of $4,000, while perhaps optimistically high, was a fair market valuation. Another aspect of the overall sales operation which deserves comment is the fact that mortgages were sold before the land was registered with the appropriate state agency. While this sounds improbable, the state’s testimony indicated that it was an acceptable practice. Indeed, one of the state’s witnesses indicated that it was a state requirement; that testimony was unrebutted.
Our focus then narrows to the actual sale of securities. Did the state prove a fraudulent sale of securities by demonstrating material misrepresentations or omissions? Arguably yes, but the proof totally failed to link the defendant Butts to the misrepresentations or omissions. Testimony revealed that the specific notes and mortgages in question were sold by William Taylor. Taylor was employed as a salesperson by Hartwell and Associates. Hartwell, in turn, was a mortgage broker who was also a director of SEI, Inc., and an officer of Interlachen Village Estates, Inc. The crucial point is that the state failed to prove that Butts was involved in the allegedly fraudulent sales. If anything, the proof was to the contrary. The following colloquy is illustrative.
Q. (By Defense Counsel) But did he [Butts] tell Mr. Hartwell what to say or what representations to make?
A. (By David Edstrom) No, I don’t think so.
Q. Did he ever deal with Mr. Taylor?
A. No.
In short, the state failed to link Butts to any wrongdoing.
To be convicted of aiding and abetting, a defendant must have (1) the intent that the crime be committed and (2) by words or acts, assist or encourage another in the actual commission of the crime. Chaudoin v. State, 362 So.2d 398 (Fla. 2d DCA 1978). Where evidence of guilt is solely circumstantial, the proof must be inconsistent with any reasonable hypothesis of innocence as well as consistent with a hypothesis of guilt. Lockett v. State, 262 So.2d 253 (Fla. 4th DCA 1972).
Mr. Butts was not an officer or director of Interlachen Village Estates, nor did he have any interest in SEI. It is true that *471 Mr. Butts was a substantial shareholder in Interlachen Village Estates, and bore some responsibility for developing this financing scheme. The evidence at trial, however, clearly demonstrated that Mr. Butts did not sell the promissory notes nor did he direct SEI or its associates in the sale of these securities. Thus, as a matter of law, we conclude that Mr. Butts did not, ‘by words or acts,’ assist in the actual commission of the crime charged. The element of intent also seems attenuated in this case since it was unrefuted that it was the failure of the state to allow the land to be registered which rendered the mortgages unsaleable.
Since we find a fatal deficiency of evidence, we reverse.
ANSTEAD and BERANEK, JJ., concur.

. A ‘security’ as defined in § 517.021(15), Fla. Stat. (1981).

. The language of the information suggests a conspiracy charge. But the state consistently asserted that it was charging the defendant as an aider and abettor, not as a coconspirator. To illustrate, the Assistant State Attorney told the court: “[T]here is no conspiracy count. Conspiracy is a totally separate and distinct offense from aiding and abetting. And I know that the defense would love to show that we are alleging a conspiracy here. We are not.” (R 54).